

SO ORDERED.

SIGNED this 5 day of February, 2018.

David M. Warren
United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                                CASE NO. 15-04581-5-DMW

RICHARD THOMAS HAYES
LOLETTA S. HAYES                               CHAPTER 13

                 DEBTORS

## ORDER DENYING MOTIONS TO MODIFY PLAN

The matters before the court are the Debtors' Motion to Modify Chapter 13 Plan and Fee

Application ("Debtors' Motion") filed by Richard Thomas Hayes and Loletta S. Hayes ("Debtors")

on January 31, 2017, the Trustee's Amended Response in Objection to Motion to Modify Chapter

13 Plan ("Objection") and Trustee's Motion to Modify Plan ("Trustee's Motion") filed on April

11, 2017 by Chapter 13 trustee John F. Logan, Esq. ("Trustee"), and the Debtors' Response to

Chapter 13 Trustee's Motion to Modify filed by the Debtors on May 1, 2017.  The court conducted

a hearing on September 6, 2017 in Raleigh, North Carolina.  Cort I. Walker, Esq. appeared for the

Debtors, and Michael B. Burnett, Esq. appeared for the Trustee.  At the conclusion of the hearing,

the court took the matters under advisement and provided the parties an opportunity to file

supporting memoranda.  After reviewing those filed memoranda and considering the evidence and

arguments of counsel presented at the hearing, the court denies without prejudice both the Debtors' Motion and the Trustee's Motion for the reasons set forth below.

## JURISDICTION

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1). *See In re Swain*, 509 B.R. 22, 24 (Bankr. E.D. Va. 2014) (holding that a proceeding regarding modification of a chapter 13 plan is a core proceeding). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

## BACKGROUND

The Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code[1] on August 24, 2015, and the court appointed the Trustee to administer the case pursuant to § 1302. The Debtors then resided and continue to reside at 785 Warren Bullock Road, Henderson, North Carolina ("Residence"), which consists of real property and a manufactured home owned solely by the female Debtor. At the time of the petition, the Residence had a scheduled value of $80,000.00 and was subject to a perfected mortgage lien in favor of Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt"). On September 3, 2015, Vanderbilt filed a proof of claim for the amount of $44,630.54 due as of the petition date. The female Debtor claimed a $34,758.46 homestead exemption in the Residence pursuant N.C. Gen. Stat. § 1C-1601(a)(1), leaving no significant equity in the Residence available for the benefit of unsecured creditors.

On September 8, 2015, the Debtors filed a Chapter 13 Plan ("Plan") which proposed monthly payments to the Trustee in the amount of $1,262.00 for a period of 60 months for a total

---

[1] Except for formal citations, references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

"plan base" of $75,720.00. The monthly payment amount of $1,262.00 was derived directly from the Debtors' Schedule I of income and Schedule J of expenses filed on September 8, 2015.[2] Schedule I reflects that at that time, the male Debtor had been employed since August, 2015 (only a month) as a temporary worker with Staffmasters earning a monthly take-home pay of $2,271.23. The female Debtor had been employed for four years with Trialcard, earning a monthly take-home pay of $1,184.46. The Debtors reported additional tax refund income spread out over 12 months and allocated to the Debtors as $100.00 and $200.00 per month, respectively. The Debtors' monthly expenses reported on Schedule J totaled $2,494.00 and did not include payment on the Vanderbilt mortgage. Subtracting these monthly expenses from the Debtors' combined monthly income resulted in a net monthly income of $1,261.69 as follows:

| | |
|---|---|
| Male Debtor's take-home pay | $ 2,271.23 |
| Female Debtor's take-home pay | 1,184.46 |
| Male Debtor's tax refund | 100.00 |
| Female Debtor's tax refund | 200.00 |
| Total income | $ 3,755.69 |
| Monthly expenses | (2,494.00) |
| NET MONTHLY INCOME | $ 1,261.69 |

The Plan provides for the Trustee to use a portion of the plan base to make monthly conduit mortgage payments in the estimated amount of $611.00 to Vanderbilt, with pre-petition arrearages to be cured over the life of the Plan. Three additional secured claims that are respectively related to the Debtors' vehicles are also to be paid through the Plan. The Debtors scheduled no claims entitled to priority pursuant to § 507. Finally, the Plan provides that "[g]eneral unsecured claims

---

[2] The "means test" set forth in the Debtors' Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period, commonly known as "Form 22C-1," establishes that the Debtors' income during the six-month period preceding the petition was below the median family income in North Carolina for their size household. In this district, below-median debtors must devote to a Chapter 13 plan for the applicable commitment period, in this case three years, their "projected disposable income," which is based on income minus expenses from Schedules I and J. *In re Pliler*, 487 B.R. 682, 692 B.R. (Bankr. E.D.N.C. 2013), *aff'd and remanded sub nom. Pliler v. Stearns*, 747 F.3d 260 (4th Cir. 2014) (citing *Hamilton v. Lanning*, 560 U.S. 505, 130 S. Ct. 2464, 177 L. Ed.2d 23 (2010)).

3

shall be paid through the plan pro rata to the extent that funds are available after disbursements are made to pay secured claims, arrearage claims, priority claims, and other specially classified claims." (Ch. 13 Plan ¶ 11, ECF No. 10).

The Debtors' case proceeded swiftly, and shortly after conducting the Debtors' meeting of creditors pursuant to § 341, the Trustee moved for confirmation of the Plan. Based upon the liquidation analysis required for confirmation by § 1325(a)(4), the Trustee determined that the Plan does not require any payment to general unsecured creditors and established an "unsecured pool" of $0.00; however, the Trustee's motion for confirmation states that "the Unsecured Pool shall be increased by the 'base' amount not needed to satisfy allowed secured, priority, and administrative claims (including the Trustee's commission)." (Mins. of 341 Mtg. and Mot. For Confirmation of Plan ¶ 8, ECF No. 12). At the time of his motion for confirmation, the Trustee projected a twenty-five percent (25%) dividend to unsecured creditors, but this projection was later decreased to eight percent (8%) after unscheduled and higher-than-scheduled unsecured claims were filed. On November 6, 2015, the court entered an Order Confirming Chapter 13 Plan.

As quickly as the Plan was confirmed, the Debtors defaulted in their payments, and the Trustee filed a Motion to Dismiss on February 17, 2016. The Debtors cured the delinquency pursuant to the terms of a Consent Order between the parties; however, the cure was short-lived, and the Trustee filed a second Motion to Dismiss on September 19, 2016. This motion was also resolved by a Consent Order which provided for a cure of the Debtors' default.

In early 2017, the Debtors' luck took a turn for the better when their friend, Tamesha M. Jenkins, paid directly Vanderbilt's mortgage claim in full. After this mortgage satisfaction, Vanderbilt returned funds received from the Trustee and amended its proof of claim to $0.00. In the Debtors' Motion, the Debtors are requesting the court to modify the Plan pursuant to

4

§ 1329(a)(3) to discontinue conduit payments to Vanderbilt and decrease the plan base to $43,714.00 by providing for payments totaling $19,204.00 through January, 2017 and monthly payments of $570.00 for 43 months thereafter, beginning in February, 2017. The Trustee objects to this proposed modification, contending that the reduced plan base will not satisfy the liquidation test of § 1325(a)(4) in light of the increased equity in the Residence caused by Ms. Jenkins' payment to Vanderbilt. The Trustee's Motion offers an alternative modified plan base of $69,284.00 reached by payments totaling $20,924.00 through April, 2017 followed by monthly payments of $1,209.00 for 40 months.

A couple months after filing the Debtors' Motion, and in response to the Objection and the Trustee's Motion, the Debtors provided the Trustee with amended Schedules I and J[3] which reflect a reduction in their net monthly income to approximately $570.00, the proposed modified monthly Plan payment. The difference is mostly the result of decreased income from the male Debtor who is reported in the amended Schedule I to have been employed with Advantage Care since August, 2016 with a monthly take-home pay of $1,170.93. The female Debtor remains employed with Trialcard and reported an increased monthly take-home pay of $1,926.12. The Debtors' combined income was further reduced by cessation of the tax refund income. The distribution of the Debtors' expenses changed slightly from their original Schedule J and totaled a marginally greater amount of $2,527.00. The resulting net monthly income was $570.05 as follows:

| | |
|---|---|
| Male Debtor's take-home pay | $ 1,170.93 |
| Female Debtor's take-home pay | 1,926.12 |
| Total income | $ 3,097.05 |
| Monthly expenses | (2,527.00) |
| NET MONTHLY INCOME | $ 570.05 |

[3] These amended schedules were not filed with and docketed by the court.

5

At the hearing, the female Debtor testified that her husband is a diabetic and suffered three strokes after they filed their bankruptcy petition, the first and most significant being in October, 2015.  She attributed their defaults under the Plan to the male Debtor's medical conditions which affected his ability to work and also to expenses related to her mother's illness and death.  The female Debtor explained that Ms. Jenkins received a personal injury settlement and wished to use some of the funds to alleviate the Debtors' financial burdens, prompting her satisfaction of the Debtors' mortgage with Vanderbilt.  The female Debtor testified that although Ms. Jenkins' gift was helpful, the Debtors still struggle and have significant medical and pharmacy expenses.  She stated that they are not able to afford the current monthly Plan payments of $1,262.00 but have been paying the Trustee the proposed modified payments of $570.00 each month since the mortgage was satisfied.

## DISCUSSION

"The provisions of a confirmed [Chapter 13] plan bind the debtor and each creditor . . . ." 11 U.S.C. § 1327(a).  The United States Court of Appeals for the Fourth Circuit recognizes a confirmed plan as "a new and binding contract, sanctioned by the court, between the debtors and their pre-confirmation creditor[s]." *Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 148 (4th Cir. 2007) (quoting *Matter of Penrod*, 169 B.R. 910, 916 (Bankr. N.D. Ind. 1994)).  "Like other contracts, a confirmed Chapter 13 plan is subject to modification." *Id.* (citing *Arnold v. Weast (In re Arnold)*, 869 F.2d 240, 241 (4th Cir. 1989)).

Modification of a confirmed Chapter 13 plan is governed by § 1329 which provides in relevant part as follows:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> (2) extend or reduce the time for such payments;
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan …
>
> * * *
>
> (b) (1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

11 U.S.C. § 1329(a).  A moving party seeking modification under § 1329 bears the burden of proof. *In re Matusak*, Case No. 14-02032-5-SWH, 2017 WL 4174361, at *3 (Bankr. E.D.N.C. Sept. 19, 2017).

The Fourth Circuit holds that "the doctrine of *res judicata* prevents modification of a confirmed plan *pursuant to §§ 1329(a)(1) or (a)(2)* unless the party seeking modification demonstrates that the debtor experienced a 'substantial' and 'unanticipated' post-confirmation change in his financial condition." *Murphy*, 474 F.3d at 149 (citing *Arnold*, 869 F.2d at 243) (emphasis added).  The Debtors' Motion is brought under § 1329(a)(3) which at the outset seems clearly applicable to the circumstances of this case.  The Debtors proffer and the court agrees that the substantial and unanticipated change requirement established by *Arnold* does not expressly extend to modifications under this subsection and is limited to modifications under §§ 1329(a)(1) and (2).  This argument is logical, because if a claim included in a Chapter 13 plan is otherwise paid, then modification of that plan to alter the amount of distribution to the creditor is appropriate regardless of changes to the debtor's financial condition.  The Trustee suggests that plan modification under § 1329(a)(3) is not necessary in this case to cease distribution to Vanderbilt, because Vanderbilt effectively withdrew its claim by amending the amount to $0.00, and the

Trustee can respond by adjusting distribution of the plan base to the benefit of unsecured creditors. The court agrees, but the Debtors are seeking not only to discontinue distribution to Vanderbilt but correspondingly reduce the plan base, a type of modification not contemplated by § 1329(a)(3).

Although the minimum distribution to unsecured creditors required for confirmation was $0.00, the contract between the Debtors and their unsecured creditors represented by the confirmed Plan is that the unsecured creditors will receive *pro rata* all of the plan base in excess of what is necessary to pay allowed secured, priority, and administrative claims. The court recognized recently that the result of such an agreement is that the dividend to unsecured creditors is not fixed at confirmation but subject to change, noting that "the goal of chapter 13 is *not* for the debtor to pay the least amount the debtor can get away with, but instead to pay the greatest amount the debtor can afford." *In re Smith*, Case No. 14-02611-5-SWH, 2016 WL 3232728, at *5 (Bankr. E.D.N.C. June 3, 2016) (emphasis in original).

In *Smith*, the Chapter 13 debtor sold her residential real property post-confirmation and moved to modify her plan to discontinue conduit payments to the mortgagee and reduce the plan base. The debtor refused to provide the trustee with amended Schedules I and J, contending that she did not have to meet the disposable income requirements of § 1325(b), because that section was not required for modification by § 1329(b)(1). The court disagreed and directed the debtor to provide the trustee with updated income and expense information. Following the established Fourth Circuit cases, the court held that any resulting increase in the debtor's disposable income caused by the sale of her home should be dedicated to the unsecured creditors:

> There is no doubt that the sale of the real property, in a vacuum, resulted in reduction in the debtor's housing expense. Unless that expense was replaced by another expense, a fact unknown to the trustee and to the court due to the refusal to provide updated income and expense information, *Murphy*, *Carroll*,[4] and *Arnold*

---

[4] *Carroll v. Logan*, 735 F.3d 147 (4th Cir. 2013).

all demonstrate that any resulting increase in disposable income should benefit unsecured creditors.

*Id.* at *6.

In another similar case from this district, a Chapter 13 debtor's mortgage was forgiven after confirmation of her plan, and the debtor sought a retroactive reduction in plan payments. The court followed *Smith* in finding that Chapter 13 policy demands that the amount of the monthly plan payment, rather than the minimum required distribution to unsecured creditors, is binding. *In re Williams*, Case No. 14-00793-5-JNC, 2016 WL 4069776, at *2 (Bankr. E.D.N.C. July 28, 2016). The court denied modification of the debtor's plan, finding that—

> [t]he monthly plan payment is based on what the [sic] Ms. Williams could afford, not the lowest amount she can get away with paying. Ms. Williams has provided no information to the court that would demonstrate a changed circumstance that impacted her ability to make the monthly plan payment as originally confirmed. . . . The cancellation of the mortgage may create a windfall, but all of the benefit will not go to Ms. Williams. Instead, the balance in the possession of the trustee as well as future payments will be used to repay unsecured creditors based on the language of paragraph 11 in the confirmed plan, which provides that "General unsecured claims shall be paid through the plan pro rata to the extent that funds are available after disbursements are made to pay secured claims, arrearage claims, priority claims, and other specially classified claims."

*Id.*

Vanderbilt's withdrawal of its secured claim increases the Plan's ultimate distribution to unsecured creditors; therefore, the Debtors' proposed reduction of the plan base will affect the Plan's distribution to this class and more appropriately qualifies as a § 1329(a)(1) modification, which undoubtedly requires a substantial and unanticipated change in the Debtors' financial condition. The parties submit that Ms. Jenkins' gratuitous satisfaction of the Debtors' mortgage with Vanderbilt meets this threshold, because the gift was not anticipated when the Plan was confirmed and resulted in a substantial reduction of the Debtors' liabilities. The court recognizes the existence of this substantial and unanticipated change in the Debtors' financial condition, but

9

the change is an *improvement* in their financial condition and does not support the essence of the modification which the Debtors are seeking.  Undoubtedly familiar with the court's holding in *Smith* and *Williams*,[5] the Debtors offered amended Schedules I and J as evidence of a financial change beyond the satisfaction of their mortgage.  The Debtors have not met their burden of establishing that the reduction in their net monthly income reflected in these amended schedules, which is conveniently equivalent to the amount previously being paid on the Vanderbilt mortgage, amounts to a substantial and unanticipated change in their financial condition.

The court recognizes that other jurisdictions within the Fourth Circuit have followed *Arnold* to find "that increases or decreases in income of approximately 50% are 'substantial.'" *In re Matusak*, 571 B.R. 176, 179-80 (Bankr. E.D.N.C. 2017) (citing *Swain*, *supra*; *In re Runnels*, 530 B.R. 626 (Bankr. W.D.N.C. 2015)).  The difference between the Debtors' monthly income of $3,755.69 reported in the Debtors' originally filed Schedule I and the monthly income of $3,097.05 reported in the amended Schedule I provided to the Trustee is approximately seventeen and a half percent (17.5%) and does not qualify immediately as a substantial decrease; however, this reduction in income, with no change in expenses, results in an over fifty percent (50%) reduction in the Debtors' *net* monthly income.  Regardless of whether the decrease in income is substantial, the court concludes that it was not unanticipated.

"When determining if an increase [or decrease] is 'unanticipated,' "it must be determined 'whether a debtor's altered financial circumstances could have been *reasonably anticipated* at the time of confirmation by the parties seeking modification." *Id.* at 180 (emphasis in original) (quoting *In re Fitak*, 92 B.R. 243, 250 (Bankr. S.D. Ohio 1988)).  The decrease in the Debtors' income was caused predominantly by a reduction of the male Debtor's income.  The plan base

---

[5] The Debtors' counsel also represented the debtor in *Smith*.

proposed by the Debtors was founded partly upon income being earned by the male Debtor through a temporary staffing agency with which he was newly employed.  At the time of the Plan's confirmation, the stability and regularity of this employment was not established to the point that any reduction of income would be unanticipated.  The female Debtor testified that the male Debtor's employment and income were affected by his strokes and related medical conditions. While such ailments are often unanticipated, the female Debtor stated that the male Debtor's first and most significant stroke occurred in October, 2015 which was the month prior to confirmation of the Plan.  Any effect the stroke might have on the Debtors' future income should, therefore, have been anticipated at confirmation.  The court further notes that the male Debtor appears to have been employed in some fashion throughout most of the Chapter 13 case, so it is unclear whether his reduced income is the result of his medical hardships or simply a change in employer and position.  Beyond the parties' employment, the Debtors expended their tax refund, but this decrease in income was definitely anticipated as it was noted on the Debtors' original Schedule I.

The female Debtor also blamed their continued financial hardship upon the costs of the male Debtor's medications; however, the Debtors report no change in their medical expenses on the amended Schedule J.  The female Debtor also spoke of expenses and time lost from work[6] related to caring for her infirm mother as well as funeral and other expenses related to her mother's eventual death.  The amended Schedule J reflects no change in expenses that could be attributed to these causes, and for the same reasons stated with respect to the male Debtor's income, insufficient evidence exists that any purported increase in expenses was unanticipated.  The increase in overall expenses between the Debtors' original and amended Schedule J is a mere $33.00, which is certainly not substantial.  As with their income, the Debtors have failed to

---

[6] Regardless of whether the female Debtor missed work caring for her mother, the amended Schedule I shows that her income has actually increased.

11

establish adequately any substantial and unanticipated change in expenses that would warrant modification of the Plan under § 1329(a)(1).

The parties' dispute as presented at the hearing and in the memoranda is not whether modification of the Plan is permissible under § 1329(a) but whether the Debtors' proposed modification satisfies § 1329(b)(1)'s mandate that the confirmation requisites of § 1325(a) apply to the modification, specifically the liquidation test or "best interest of creditors" test set forth in § 1325(a)(4).  This subsection requires that "the value, *as of the effective date of the plan*, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1325(a)(4) (emphasis added).

The Trustee asserts that the liquidation test must be applied as of the effective date of the modified plan, which in this case would realize the newfound equity in the Residence for the benefit of unsecured creditors and require monthly plan payments greater than the $570.00 proposed by the Debtors.  The Debtors contend that the liquidation test applied as of the effective date of the original plan continues to control modifications.  The bankruptcy courts have differing opinions on this issue, and the Fourth Circuit has provided no current guidance.  With the court now having determined that the Debtors' proposed modification of their plan base as presented is not allowable under § 1329(a), the court does not reach consideration this issue. *See Murphy*, 474 F.3d at 150 (noting that "[i]f the proposed modification meets one of the circumstances listed in § 1329(a), then the bankruptcy court can turn to the question of whether the proposed modification complies with § 1329(b)(1)").  If either the Debtors, the Trustee, or any other party in interest propose subsequently a modification to the Plan that meets the criteria of § 1329(a), then the court

may determine the controlling effective date for the liquidation test required for modification by § 1329(b)(1), incorporating and § 1325(a)(4); now therefore,

It is ORDERED, ADJUDGED, AND DECREED as follows:

1.      The Debtors' Motion and the Trustee's Motion be, and hereby are, denied without prejudice; and

2.      Notwithstanding denial of the Debtors' Motion, the included request that Debtors' counsel be paid the presumptive non-base fee of $450.00 through the Plan as an administrative priority claim be, and hereby is, allowed.

**END OF DOCUMENT**